UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

PATRICIA A. CARNEY,

                        Plaintiff,

                        Case # 16-CV-269-FPG

v.

                        DECISION AND ORDER

NANCY A. BERRYHILL,[1] ACTING COMMISSIONER
OF SOCIAL SECURITY,

                        Defendant.

Patricia A. Carney ("Carney" or "Plaintiff") brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner") that denied her application for disability insurance benefits ("DIB") under Title II of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. § 405(g).

Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 10, 11. For the reasons that follow, the Commissioner's motion is GRANTED and Plaintiff's motion is DENIED.

## BACKGROUND

On July 31, 2012, Carney protectively applied for DIB with the Social Security Administration ("the SSA"). Tr.[2] 183-87. She alleged that she had been disabled since March 5, 2011 due to cervical disc fracture, neck pain, right wrist injury, breast cancer, depression, and anxiety. Tr. 205. On December 13, 2013, Carney and a vocational expert ("VE") appeared and testified at a hearing before Administrative Law Judge William M. Weir ("the ALJ"). Tr. 35-73.

---

[1]     Nancy A. Berryhill is now the Acting Commissioner of Social Security and is therefore substituted for Carolyn W. Colvin as the defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d).
[2]     References to "Tr." are to the administrative record in this matter.

1

On September 26, 2014, the ALJ issued a decision finding that Carney was not disabled within the meaning of the Act. Tr. 18-29. On February 9, 2016, the Appeals Council denied Carney's request for review. Tr. 1-4. Thereafter, Carney commenced this action seeking review of the Commissioner's final decision. ECF No. 1.

**LEGAL STANDARD**

**I.     District Court Review**

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

**II.    Disability Determination**

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not,

the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

**I.     The ALJ's Decision**

The ALJ's decision analyzed Carney's claim for benefits under the process described above. At step one, the ALJ found that Carney had not engaged in substantial gainful activity from her alleged disability onset date to March 31, 2013, her date last insured. Tr. 20. At step two, the ALJ found that Carney has the following severe impairments: degenerative disc disease of the cervical spine, and right knee, leg, and back pain. Tr. 20-22. At step three, the ALJ found that these impairments, alone or in combination, did not meet or medically equal an impairment in the Listings. Tr. 22-23.

Next, the ALJ determined that Carney retained the RFC to perform light work[3] except she can have no more than frequent contact with coworkers, supervisors, and the public. Tr. 23-27. At step four, the ALJ relied on the VE's testimony and found that this RFC allows Carney to perform her past relevant work as a remittance clerk. Tr. 27-28. The ALJ made an alternative finding at step five and relied on the VE's testimony to determine that Carney can adjust to other work that exists in significant numbers in the national economy given her RFC, age, education, and work experience. Tr. 28-29. Specifically, the VE testified that Carney could work as a warehouse support worker and assembly machine operator. Tr. 28. Accordingly, the ALJ concluded that Carney was not "disabled" under the Act. Tr. 29.

---

[3]     "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

## II. Analysis

Carney argues that remand is required because the ALJ improperly (1) rejected the opinions of her treating physician Lynne Ross, M.D. ("Dr. Ross"); and (2) relied on the stale opinion of consultative examiner Hongbiao Liu, M.D. ("Dr. Liu"). ECF No. 10-1, at 20-28. These arguments will be addressed in turn below.

### 1. Dr. Ross's Opinion

Carney asserts that the ALJ erred when he rejected Dr. Ross's opinions without providing the requisite "good reasons" for doing so. ECF No. 10-1, at 20-25; ECF No. 13. She also argues that the ALJ should have contacted Dr. Ross for clarification of her opinion. *Id.*

#### A. Good Reasons

The "treating physician rule" is "a series of regulations set forth by the Commissioner . . . detailing the weight to be accorded a treating physician's opinion." *De Roman v. Barnhart*, No. 03 Civ. 0075 (RCC) (AJP), 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003) (citing 20 C.F.R. § 404.1527). Under the treating physician rule, the ALJ must give controlling weight to a treating physician's opinion when that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(c)(2); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). While an ALJ may discount a treating physician's opinion if it does not meet this standard, the ALJ must "comprehensively set forth [his or her] reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004); 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion.").

Even when a treating physician's opinion is not given "controlling" weight, the ALJ must still consider several factors in determining how much weight it should receive. The ALJ must consider "the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the relevant evidence, particularly medical signs and laboratory findings, supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues." *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (quotation marks, alterations, and citations omitted); 20 C.F.R. § 404.1527(c)(1)-(6).

Here, the ALJ cited many of Dr. Ross's treatment notes throughout his decision. Tr. 25-27. He noted that Dr. Ross completed physical assessments on three separate occasions wherein she opined that Carney was very limited in her ability to lift, carry, push, and pull; was moderately limited in her ability to walk, sit, hear, speak, and use her hands; could not lift more than five pounds; and had to move after sitting for more than 15 minutes. Tr. 27 (citing Tr. 593, 722-23, 853-54). The ALJ determined that Dr. Ross's opinion was entitled to only "little weight" because it was "inconsistent with the medical evidence of record." Tr. 27. Specifically, the ALJ reasoned that (1) the record did not support Dr. Ross's opinion that Carney is limited in hearing, speaking, and using her hands; (2) Dr. Ross's opinion is inconsistent with Carney's daily activities; and (3) Carney and her doctors reported that she was doing well after cervical fusion surgery. Tr. 27 (citing Tr. 358, 520, 582, 585). These reasons will be discussed in turn below.

### i. Limitations as to Hearing, Speaking, and Using Hands

In accordance with the SSA's regulations, the ALJ was entitled to discount Dr. Ross's opinion because he found that it was inconsistent with the record as a whole. 20 C.F.R. §

6

404.1527(c)(4). Carney argues that, despite the ALJ's assertion to the contrary, the record contains evidence demonstrating that she experienced hearing, speaking, and hand limitations. For instance, Carney cites a treatment note where she reported that she "hears things," however, this statement is not further explained nor does the doctor assess any specific hearing-related limitations. Tr. 685. Carney cites another treatment note that she argues demonstrates that she "had hallucinations where she heard things," but this treatment note clearly states that she reported "*visual* hallucinations but *denies auditory hallucinations*." Tr. 540 (emphasis added). As to speaking, Carney cites a single treatment note that merely provides that she "[s]tumbles over words at times." Tr. 771. This statement, which is vague and lacks any explanation, does not establish that Carney suffered from speaking limitations in support of Dr. Ross's opinion. As to using her hands, Carney cites a treatment note wherein she complained of left hand tremor. Tr. 646. Review of this treatment note, however, reveals that this tremor "resolved on its own." *Id.* Carney cites other treatment notes that indicate that she reported trembling after a medication was increased and that she had right arm paresthesia, but these notes do not contain work-related hand limitations. Tr. 540, 642.

    The ALJ was entitled to weigh the above evidence against the other evidence of record and to resolve any conflicts when evaluating Dr. Ross's opinion. *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.") (citation omitted); *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) (when the court reviews a denial of disability benefits it must "defer to the Commissioner's resolution of conflicting evidence"). It is clear that the ALJ found that the lack of evidence as to these specific limitations undermined Dr. Ross's opinion and therefore did not afford it controlling weight.

### ii. Daily Activities

The ALJ also discounted Dr. Ross's opinion because he found that "her allegation that [Carney] was limited in her ability to sit, lift, carry, push and pull is not consistent with [Carney]'s statement that she was able to engage in all activities of daily living, including walking her dog." Tr. 27 (citing Tr. 520, 585). In support of this conclusion, the ALJ cites a treatment note wherein the doctor noted that Carney is able to "carry out her activities of daily living" and "walk her dog at home." *Id.* The ALJ also gave significant weight to Dr. Liu's opinion, who indicated that Carney cooked two to three times a week, shopped once a month, tended to her personal hygiene, and liked to watch television. Tr. 690.

Carney argues that she struggled with activities of daily living and cites portions of her hearing testimony and a treatment note that states that her neck pain "was aggravated by activities of daily living." ECF No. 10-1, at 23-24 (citing Tr. 50, 58-60). Carney also cites treatment notes where she reported that "at times when she walks her legs want to give out and become weak" and that she complained of neck and back pain and was prescribed pain medications. ECF No. 10-1, at 24 (citing Tr. 561, 569, 576, 579, 611, 690).

As mentioned previously, an ALJ is entitled to discount a medical opinion that is inconsistent with the record as a whole, which is what the ALJ found here. 20 C.F.R. § 404.1527(c)(4). Moreover, although the claimant "need not be an invalid" to be disabled under the Social Security Act, *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (citation omitted), the ALJ is entitled to consider the claimant's daily activities when he or she evaluates the claimant's symptoms. 20 C.F.R. § 404.1529(c)(3)(i). Here, the ALJ did not use Carney's daily activities as the sole reason to discount Dr. Ross's opinion, and he was entitled to weigh all the evidence

described above and resolve genuine conflicts in the record when evaluating that opinion. *See Veino*, 312 F.3d at 588; *Cage*, 692 F.3d at 122.

### iii. Post-Surgery Improvement

Finally, the ALJ discounted Dr. Ross's opinion because Carney reported to Dr. Ross that she "was doing well and her cervical fusion was stable" and her neurosurgeon reported that she "had relatively good results from the surgery" and was "stable." Tr. 27 (citing Tr. 358, 582). Carney argues that these statements were vague and the ALJ improperly used his lay opinion to determine that these statements undermined Dr. Ross's opinions. The Court finds, however, that it was within the ALJ's discretion to determine that Carney's post-surgery improvement undermined Dr. Ross's opinion and rendered it inconsistent with the record as a whole. *See Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 58-59 (2d Cir. 2013) (summary order) ("Under this very deferential standard of review, once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*.") (quotation marks and citations omitted) (emphasis in original). It was reasonable for the ALJ to conclude that Carney's reported post-surgery condition improved her functional capacity and constituted a basis for rejecting Dr. Ross's prescribed limitations.

### B. Contacting Dr. Ross

Carney asserts that the ALJ should have contacted Dr. Ross and asked her to clarify her opinion before he rejected the opinion as inconsistent with the record. ECF No. 10-1, at 23; ECF No. 13, at 2-5.

An ALJ may be required to "recontact a treating physician to clarify his or her opinion where it 'contains conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and

laboratory diagnostic techniques.'" *Allen v. Colvin*, No. 3:14-CV-1368, 2016 WL 1261103, at *12 (N.D.N.Y. Mar. 30, 2016) (quoting 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1)). This rule applies, however, where a medical source's opinion is *internally inconsistent*, not where it is inconsistent with other evidence in the record. *See, e.g.*, *Allen*, 2016 WL 1261103, at *12 (finding that the ALJ should have contacted the plaintiff's treating physician for clarification before he discounted that opinion due to an internal inconsistency); *Romero v. Colvin*, No. 11-CV-3920 (ENV), 2016 WL 74820, at *4 (E.D.N.Y. Jan. 6, 2016) ("[T]o the extent that the ALJ perceived internal inconsistencies in [the treating physician]'s opinion, he was obliged to recontact [the treating physician] and attempt to resolve them."); *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998) (holding that "even if the [treating physician's] clinical findings were inadequate, it was the ALJ's duty to seek additional information from [the treating physician]").

Here, the ALJ did not discount Dr. Ross's opinions because they were internally inconsistent, lacked information, or were not well supported by Dr. Ross's objective findings. Tr. 27; *see* 20 § C.F.R. 404.1527(c)(3) (an ALJ will give more weight to a medical source's opinion who presents relevant evidence and a thorough explanation to support his or her opinion). Rather, the ALJ discounted Dr. Ross's opinions because they were inconsistent with the *record as a whole*. Tr. 27; *see* 20 § C.F.R. 404.1527(c)(4) (an ALJ will give more weight to an opinion that is consistent with the record as a whole). Thus, the ALJ was not obligated to contact Dr. Ross. Moreover, it appears that the record was adequately developed as it contains nearly 1,000 pages of medical evidence, including at least four medical source opinions aside from Dr. Ross's opinions. *See, e.g.*, Tr. 684-88, 689-92, 700-13, 838-43; *Rosa v. Callahan*, 168 F.3d 72, 77 n.5 (2d Cir. 1999) ("[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation

10

to seek additional information in advance of rejecting a benefits claim.") (quotation marks and citation omitted).

## 2. Dr. Liu's Opinion

Carney also argues that the ALJ erred by relying on consultative examiner Dr. Liu's opinion because it was stale.[4] ECF No. 10-1, at 25-28. Specifically, Carney asserts that Dr. Liu's opinion did not account for her deteriorating neck and knee conditions. *Id.*

"[M]edical source opinions that are conclusory, stale, and based on an incomplete medical record may not be substantial evidence to support an ALJ finding." *Camille v. Colvin*, 104 F. Supp. 3d 329, 343-44 (W.D.N.Y. 2015), *aff'd*, 652 F. App'x 25 (2d Cir. 2016) (quotation marks and citation omitted). A medical opinion may be stale if it does not account for the claimant's deteriorating condition. *See, e.g.*, *Jones v. Comm'r of Soc. Sec.*, No. 10 CV 5831(RJD), 2012 WL 3637450, at *2 (E.D.N.Y. Aug. 22, 2012) (ALJ should not have relied on a medical opinion in part because it "was 1.5 years stale" as of the plaintiff's hearing date and "did not account for her deteriorating condition"); *Girolamo v. Colvin*, No. 13-CV-06309 (MAT), 2014 WL 2207993, at *7-8 (W.D.N.Y. May 28, 2014) (ALJ should not have afforded great weight to medical opinions rendered before plaintiff's second surgery).

Dr. Liu examined Carney on September 25, 2012 and opined that she had mild limitations for prolonged walking, bending, kneeling, and overhead reaching. Tr. 689-92. The ALJ afforded "significant weight" to Dr. Liu's opinion because he found that it was consistent with Dr. Liu's clinical examination and the record as a whole. Tr. 27; *see* 20 C.F.R. §§ 404.1527(c)(3), (4).

---

[4] Interestingly, Carney argues that Dr. Liu's opinion, which was rendered on September 25, 2012, is stale and unreliable, but she also contends that Dr. Ross's opinions are entitled to controlling weight. Dr. Ross's most recent opinion during the relevant period was provided on October 16, 2012, just three weeks after Dr. Liu rendered his opinion. There is no evidence that anything occurred during that three week period that would make Dr. Ross's opinion more reliable than Dr. Liu's opinion.

11

Carney asserts that her neck condition deteriorated after Dr. Liu provided his opinion. The records that she cites to in support of this argument, however, contain relatively benign findings. Carney points out that on September 27, 2012, she complained of trouble swallowing, yet this note also indicates that a physical exam of her neck was negative. Tr. 788. A November 21, 2012 treatment note indicates that Carney had "residual chronic neck pain," which seems to demonstrate that her neck pain persisted, not that her condition was deteriorating. Tr. 732. Similarly, a March 24, 2013 treatment note indicates that she had "ongoing neck pain for years." Tr. 740. On January 8, 2014, after Carney's date last insured, her neurosurgeon recommended surgery to relieve her neck pain. Tr. 894-95. However, Carney's "reliance on evidence demonstrating a worsening of her condition after [her date last insured] is of little value" because she was required to demonstrate that she was disabled as of March 31, 2013. *Vilardi v. Astrue*, 447 F. App'x 271, 272 (2d Cir. 2012) (summary order). Moreover, it is apparent that Dr. Liu considered Carney's neck condition when he rendered his opinion. Dr. Liu noted that Carney had chronic neck pain that radiated to her shoulders. Tr. 689. He also performed a physical exam of her neck and diagnosed her with chronic neck pain. Tr. 691-92.

Carney also argues that Dr. Liu's September 25, 2012 opinion did not account for her right knee condition after she fell and injured herself on March 28, 2013. When the ALJ weighed Dr. Liu's opinion, however, he specifically mentioned Carney's right knee and noted that right knee x-rays were normal. Tr. 27 (citing Tr. 777). Additionally, the ALJ discussed Carney's knee condition at length in another portion of his decision. Tr. 25. The ALJ noted that Carney experienced right knee pain after she fell in March 2013. Tr. 25 (citing Tr. 797). However, examination revealed that there was no obvious instability of her right knee, muscle tone was normal, her active range of motion was zero to 45 degrees, and crepitation and

instability testing were negative. *Id.* The ALJ noted that Carney reported knee improvement after she underwent physical therapy and cortisone injections. Tr. 25 (citing Tr. 779). Carney also reported in April 2013 that her knee pain was better, and she reported in October 2013 that she had been riding her bike and participating in physical therapy. Tr. 25 (citing Tr. 784, 846). Thus, it is clear that the ALJ was fully aware of Carney's knee condition when he weighed Dr. Liu's opinion.

For these reasons, the Court finds that Dr. Liu's opinion was not stale and that the ALJ did not err when he gave significant weight to that opinion because it was consistent with Dr. Liu's clinical examination and with the record as a whole. Tr. 27; *see* 20 C.F.R. §§ 404.1527(c)(3), (4); *Barber v. Comm'r of Soc. Sec.*, No. 6:15-CV-0338 (GTS/WBC), 2016 WL 4411337, at *7 (N.D.N.Y. July 22, 2016) (citations omitted) ("It is well established that an ALJ may rely on the medical opinions provided by State agency consultants and that those opinion[s] may constitute substantial evidence.").

## CONCLUSION

For all the reasons stated, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 11) is GRANTED, and Plaintiff's Motion for Judgment on the Pleadings (ECF No. 10) is DENIED. Plaintiff's Complaint (ECF No. 1) is DISMISSED WITH PREJUDICE. The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: May 12, 2017
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court